# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 964 | **DATE** | 8/2/2002 |
| **CASE TITLE** | Brenda Brown Thomas vs. The Habitat Co. and Ken Gilliano | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, defendant Habitat's motion for summary judgment [31-1] is granted in part and denied in part and defendant Habitat's motion to dismiss the second amended complaint [31-2] is denied with respect to counts II, IV and V. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | **3** | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | number of notices | |
| | Notified counsel by telephone. | | AUG 0 5 2002 | |
| | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | | 42 |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| | | | 8/2/2002 | |
| KF | courtroom deputy's initials | | date mailed notice | |
| | | | KF | |
| | | | mailing deputy initials | |

CLERK
U.S. DISTRICT COURT

02 AUG -2 PM 2: 52

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



BRENDA BROWN THOMAS,       )
                           )
          Plaintiff,       )
                           )
     v.                    )     No.  00 C 0964
                           )
THE HABITAT CO. and KEN GILLIANO,  )
an individual,             )
                           )
          Defendants.      )

### MEMORANDUM OPINION AND ORDER

Brenda Brown Thomas was employed by the Habitat Company ("Habitat"), a property management company, as a grounds person from June 1999 to October 2001. She claims that she was sexually harassed by her supervisor, Ken Gilliano, and that Habitat retaliated against her for complaining about the sexual harassment by changing her working conditions and ultimately firing her. She sues Habitat under Title VII, 42 U.S.C. § 2000e *et seq.*, and sues Habitat and Gilliano for several causes of action under Illinois law. Habitat moves for summary judgment and dismissal of all of Ms. Brown's claims. I grant the motion in part and deny it in part.

I.

Ms. Brown was interviewed for the position with Habitat by Gilliano and Renee Griffin, Gilliano's supervisor, in May 1999. Ms. Brown had lived on the property that she would be maintaining before applying for the job, and during the interview, Gilliano said that he used to watch Ms. Brown all the time, and that he was

in love with her. After Gilliano left the room, Ms. Brown asked Griffin whether Gilliano meant what he said about being in love with her, and Griffin responded that she thought Gilliano was just "playing." Ms. Brown told Griffin that she did not "play like that." She took the job and started working in June 1999 as a groundsperson, and later as a janitor, picking up litter outside Habitat's buildings and cleaning the hallways of the buildings.

After a short time,[1] Ms. Brown was assigned to work in the office, taking calls and checking out supplies, as well as cleaning the office. She was given keys to the office and other buildings. In September 1999, Gilliano called Ms. Brown into his office, stating that he had something to tell her. After Ms. Brown entered his office, Gilliano told her to sit down and pulled out a chair for her. Ms. Brown sat down, and Gilliano pulled a chair over and told Ms. Brown that he was in love with her. Ms. Brown stood up to go, but Gilliano ordered her to sit down and threatened that he would "have her job" if she did not sit down. Ms. Brown started to cry and urinated on herself. When she tried to get up again, Gilliano grabbed her by the arms and said "you have to listen to me." Gilliano brought his knees near Ms. Brown, again told her that he loved her, and put his legs around her so that she could not get up from the chair. Gilliano told her not to tell anyone what had

---

[1] Ms. Brown does not say when her duties changed, but it appears from her affidavit that it was before the second incident with Gilliano, described below.

happened. When Ms. Brown finally escaped Gilliano's office, she ran down the stairs, fell, and urinated on herself again.

Ms. Brown told several of her co-workers about the incident with Gilliano, including Griffin, who told Ms. Brown to go home and said that she would report the matter to her boss. When Ms. Brown got home, she was so upset that she curled up on the floor of her closet and cried. At some point after Ms. Brown reported the incident, Griffin told her that she would have no more contact with Gilliano. Throughout the end of 1999 and the beginning of 2000, Ms. Brown documents a number of incidents when she was in the same room as Gilliano, or in close proximity, when he stared at her or frowned at her.

After the incident with Gilliano, Griffin told Ms. Brown not to clean the office anymore; instead she was assigned to clean out apartment units, which meant hauling heavy garbage by herself. In November 1999, after discussing the incident with Gilliano at a staff meeting and after complaining about having to clean units alone, Ms. Brown filed her first discrimination charge with the EEOC.

In December, Ms. Brown's hours were changed from 7:30 a.m. until 4:00 p.m. to 8:30 a.m. until 5:00 p.m., a change which she says made it impossible for her to pick up her children after school. The locks were also changed, and Ms. Brown was required to pick up unit keys in the morning and turn them in at the end of the

day rather than having a permanent set of keys. She was also instructed to punch in and pick up her radio in a dirty closet, apart from the other employees, which often meant waiting in her car in the mornings. While punching in at her time clock in the dirty closet in February 2000, Ms. Brown received an electrical shock and burned her hand, causing her to miss a week of work.

Ms. Brown received a series of (she says undeserved, and Habitat does not contest this) disciplinary notices in 1999 and 2000 for standing around and talking on work time, insubordination toward a supervisor, substandard cleaning, and leaving the work premises without permission.[2] Pl's Ex. A-E. After the first warning, Ms. Brown filed a second charge with the EEOC, adding a claim of retaliation. On October 23, 2001, Ms. Brown was fired after she threatened two other employees by saying she should get anthrax and spray it on them, and that she would "get her ass." Pl's Ex. F. Ms. Brown denies that she made this comment and said that no one at Habitat ever asked her about it before firing her. Habitat's property manager filed a criminal complaint against Ms. Brown for threatening to throw anthrax on her. Ms. Brown was charged with assault, later reduced to disorderly conduct, and convicted in a bench trial. She was sentenced to one day of supervision.

---

[2] The warning for leaving the premises was dated October 22, 2001; the rest of the warnings were in 1999 and 2000.

Ms. Brown sues Habitat under Title VII, 42 U.S.C. § 2000e *et seq.*, for sexual discrimination in the form of a hostile work environment and for retaliation (counts I and II). She also sues Habitat under Illinois law for assault (count III), battery (count IV), false imprisonment (count V), and intentional infliction of emotional distress (count VI). Habitat moves for summary judgment on counts I, II, and VI, and for dismissal of counts III, IV, and V.

## II. Counts III, IV, and V

On a motion to dismiss, I accept all well-pleaded factual allegations in the complaint as true and draw all inferences in favor of the non-moving party. *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001). I may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of h[er] claim which would entitle h[er] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Habitat argues that Ms. Brown's state law tort claims are preempted by the Illinois Workers Compensation Act ("IWCA"), 820 ILCS 305/1 *et seq.*, or in the alternative, that there is no basis for holding Habitat liable for Gilliano's actions. IWCA is an employee's exclusive remedy for accidental injuries arising out of and in the course of employment. *Meerbrey v. Marshall Field & Co., Inc.*, 564 N.E.2d 1222, 1225 (Ill. 1990). IWCA "bar[s] an employee from bringing a common law cause of action against his or her

5

employer unless the plaintiff-employee proves: (1) that the injury was not accidental; (2) that the injury did not arise from his or her employment; (3) that the injury was not received during the course of employment; or (4) that the injury was not compensable under the Act." *Id.* at 1226. Only the first exception is relevant here.

"[T]he term 'accidental' in [IWCA] is not a technical legal term but encompasses anything that happens without design or an event which is unforeseen by the person to whom it happens." *Meerbrey*, 564 N.E.2d at 1226 (internal quotation marks omitted). A common law cause of action is not barred as "accidental" "for injuries which the employer or its alter ego intentionally inflicts upon an employee or which were commanded or expressly authorized by the employer." *Id. Respondeat superior* liability is insufficient; it is not enough that the tortfeasor acted in the scope of his employment. *Id.* at 1227. The plaintiff must be able to establish that the employer itself "has committed, commanded, or expressly authorized" the tort against the employee. *Id.*

Ms. Brown concedes that she is not seeking to hold Habitat liable on a theory of *respondeat superior*; instead she alleges that Habitat, through its management, was aware of the risk of Gilliano's behavior based on his proclamation of love during Ms. Brown's interview. It would not be had Habitat merely failed to prevent Gilliano's assault and battery, *Small v. Chicago Health*

*Clubs, Inc.*, 843 F. Supp. 398, 403 (N.D. Ill. 1994) (Plunkett, J.)
(holding that allegations that employer failed to prevent tort
sounded in *respondeat superior* liability), but Ms. Brown alleges
more: she says that Habitat knew of Gilliano's actions and did
nothing. Several courts in this district have acknowledged that
"management's knowledge coupled with lack of follow-up action is
equivalent to express authorization of injurious conduct." *Quela v.
Payco-General Am. Credits, Inc.*, 84 F. Supp. 2d 956, 960 (N.D. Ill
2000) (Castillo, J.). *See also Mobley v. Kelly Kean Nissan, Inc.*,
864 F. Supp. 726, 730 (N.D. Ill. 1993) (Aspen, J.); *Cline v.
General Elec. Capital Auto Lease, Inc.*, 757 F. Supp. 923, 931 (N.D.
Ill. 1991) (Duff, J.). "[I]t is well established that an informed
ratification is equivalent to an original authorization." *Knuepfer
v. Fawell*, 449 N.E.2d 1312, 1314 (Ill. 1983). *See also Tolle v.
Interstate Sys. Truck Lines, Inc.*, 356 N.E.2d 625, 626-27 (Ill.
App. Ct. 1976) (contrasting vicarious liability with liability
based on act of ratification). *But see Walker v. Doctors Hosp. of
Hyde Park*, 110 F. Supp. 2d 704, 715 (N.D. Ill. 2000) (Keys, Mag.)
(granting summary judgment and finding assault claim preempted
where plaintiff's only evidence was that employer knew of racist
tendencies). The basis for Habitat's liability is the allegation
that it expressly authorized Gilliano's conduct by ratification.
*See Meerbrey*, 564 N.E.2d at 1227. The state law claims are not
preempted by IWCA because Ms. Brown states a basis for liability

7

other than *respondeat superior*, so I deny the motion to dismiss counts III, IV, and V.

### III. Counts I, II, and VI

Summary judgment is proper only when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. Sexual Harassment

"Sexual harassment is actionable under Title VII only when it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Worth v. Tyer*, 276 F.3d 249, 267 (7th Cir. 2001) (citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986)). The work environment must be both subjectively and objectively hostile. *See id.* "In determining whether contested conduct actually creates an objectively hostile work environment, a number of factors may be considered[,] including 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Hilt-Dyson v.*

8

*City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)). I must evaluate all of these factors "in light of the social context in which [the] events occurred." *Id.* (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).

There is no question here that under the facts stated in this motion, Ms. Brown found the environment created by Gilliano to be hostile. After Gilliano declared his love at her interview, she told Griffin that she did not "play" that way. After he confronted her in his office, she cried, fled and urinated on herself, and she curled up at home on her closet floor. Habitat argues, however, that Gilliano's behavior was not objectively offensive because it really amounted to a single incident of non-sexual touching. However, there is no minimum number of incidents; a single incident of sufficient severity is enough to make a work environment objectively hostile. *See Worth*, 276 F.3d at 268.

The fact that a single incident involves touching, rather than just verbal harassment, increases its severity, and although "direct contact with an intimate body part is one of the most severe forms of sexual harassment," *Worth*, 276 F.3d at 268, a full-blown sexual assault is not required, *see Smith v. Sheahan*, 189 F.3d 529, 534 (7th Cir. 1999). Habitat points to cases in which the Seventh Circuit held that a single incident involving a veiled solicitation of sex and a caress of the arm and back was not

sufficiently severe because no intimate body part was touched, but in those cases there was no threat of physical harm. *See DiCenso v. Cisneros*, 96 F.3d 1004, 1008-09 (7th Cir. 1996); *see also Hilt-Dyson*, 282 F.3d at 463 (holding that two minor back-rubbing incidents were not severe because they were brief and "involved no threats, intimidation or humiliation"). Here, however, in addition to twice professing his love for Ms. Brown in an inappropriate and, on one occasion, threatening way, Gilliano grabbed her by the arms and forced her to sit and wrapped his legs around her so that she could not escape. He threatened her job and also told her not to tell anyone what had happened. All of this happened in Gilliano's office, rather than in a social encounter. "[T]he line that separates the merely vulgar and mildly offensive from the deeply offensive and sexually harassing" is not an easy one to draw, *Worth*, 282 F.3d at 267, but drawing all favorable inferences from the evidence in the record, a jury could place Gilliano's conduct on the actionable side of that line. I deny summary judgment on the hostile work environment claim.

## B. Retaliation

There is no direct evidence of retaliation here, so Ms. Brown must proceed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To do so she must show that "(1) after lodging a complaint about discrimination, (2) only [s]he, and not any otherwise similarly situated employee who did

not complain, was (3) subjected to an adverse employment action even though (4) [s]he was performing h[er] job in a satisfactory manner; unless (5) the defendant presents evidence of a reason (good or bad, provided only that it is not one that the law forbids) for the adverse action." *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 642 (7th Cir. 2002). With respect to Ms. Brown's termination, Habitat does not dispute that she, and not anyone else similarly situated, was subject to an adverse employment action after complaining of discrimination. But it argues that she cannot show that she was performing up to Habitat's expectations. In the alternative, Habitat had a legitimate, non-discriminatory reason for firing her: the anthrax threat on October 23, 2001.

Habitat's notice of employee discipline states that Ms. Brown called a co-worker a "bitch" in front of other employees, said that the other employees "may think she is crazy but [they] haven't seen crazy yet," and finally said "I should get some anthrax and spray it on all of y'all." Pl's Ex. F. Ms. Brown was terminated for making these statements. Habitat's property manager filed a criminal misdemeanor charge against her. At some time prior to Ms. Brown's bench trial, the charges were changed from assault to disorderly conduct. Sheila Luckett, one of the threatened employees, and Griffin testified at the bench trial that Ms. Brown

11

had stated that she should get anthrax and spray it on them.[3] Ms. Brown was convicted and sentenced to one day of supervision.

All that Ms. Brown offers to rebut this evidence is her affidavit stating that she was not in the area where Luckett was at the time Luckett claims the anthrax comment was made, and that no one at Habitat asked for her version of events before firing her. Habitat argues that Ms. Brown is collaterally estopped from claiming here that she did not make the anthrax comment because the Circuit Court of Cook County found that she did. Under the doctrine of collateral estoppel or issue preclusion,

> an issue may not be litigated if the following conditions are met: (1) the issue sought to be precluded is the same as that involved in a prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was represented in the prior action.

*Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000). Collateral estoppel is an affirmative defense on which Habitat bears the burden of proof. *Id.* at 894.

Ms. Brown was a party to the state criminal court action, but she argues that the issues here are not the same as the issues litigated in the state criminal court because neither her discharge

---

[3] Ms. Brown objects that the statements about the content of the trial testimony are hearsay, but they are offered here not for the truth of the matter asserted, but for the effect on the listener—*i.e.*, as the basis for the court's verdict of guilty. In the alternative, even if the statement were hearsay, it would be admissible under the residual exception in Fed. R. Evid. 807 because it has sufficient circumstantial guarantees of trustworthiness in light of her conviction.

nor its allegedly retaliatory nature were before that court. However, she confuses *claim* preclusion, which bars the cause of action, with *issue* preclusion, which merely bars relitigation of a discrete issue. Habitat seeks to preclude relitigation of the fact that Ms. Brown made the anthrax threat, and argues that, in light of the unrebuttable evidence that she did, she cannot make out a retaliatory discharge claim; it does not argue that the retaliation claim itself is barred.

Ms. Brown objects that, because there was a general guilty verdict and because the charge was changed from assault to disorderly conduct, there is insufficient evidence that the issue was actually litigated. *See Chisholm v. Defense Logistics Agency*, 656 F.2d 42, 48 (3d Cir. 1981) ("A determination of which issues were litigated may not be immediately discernible when the antecedent criminal suit resulted in a general verdict of the jury or judgment of the court without special findings."). However, the issues litigated by the state criminal court are readily discernible here. Habitat provides evidence of the charge (that Ms. Brown threatened Luckett and Griffin with anthrax) and its disposition (guilty), and there is no evidence that there was any other issue before the court, so the issue of whether she made the comment was clearly before the state criminal court. How the state court characterized the offense (as assault or disorderly conduct) is irrelevant; what matters is how the factual issue was resolved,

and that is clear enough, and unrebutted, on this record. Because the state criminal court found beyond reasonable doubt that Ms. Brown made the anthrax threat, she is collaterally estopped from arguing that she did not.

Because Ms. Brown cannot rebut the evidence that she made the anthrax threat, and she provides no other evidence that she was performing up to Habitat's expectations, she cannot make out a *prima facie* case of retaliatory discharge. Even if she could make out a *prima facie* case, however, she could not rebut Habitat's evidence of a legitimate, non-discriminatory reason for firing her. *See Kahn v. United States Sec'y of Labor*, 64 F.3d 271, 279 (7th Cir. 1995) (holding that plaintiff's "belligerent and improper conduct towards his coworkers and supervisors [was a] legitimate, non-discriminatory reason for his termination); *see also Clark v. Runyon*, 218 F.3d 915, 919 (8th Cir. 2000) ("Both actual violence against fellow employees and threats of violence are legitimate reasons for terminating an employee."). Ms. Brown says that Habitat never asked for her side of the story before firing her, but the pretext inquiry does not concern the fairness of the employer's decision; what matters is whether the stated reasons for termination were honest, *see Beatty v. Wood*, 204 F.3d 713, 718 (7th Cir. 2000), and Ms. Brown offers nothing to show that the reason offered here was dishonest.

Habitat argues that Ms. Brown's remaining allegations and

evidence of pre-termination retaliation do not amount to an adverse employment action. Ms. Brown claims (and for the purposes of this motion Habitat does not dispute) that, after she filed her EEOC charges: her hours were changed so that she could no longer pick up her children after school; she was required to pick up keys for units rather than having free access and a set of keys; the keys were thrown down from the main office; she was excluded from areas of the office when other co-workers were present; she was denied the assistance of co-workers; the place designated for her to punch in away from the other employees was a dirty closet with bad wiring that caused an injury that kept her away from work for a week; and she received a series of undeserved disciplinary notices.

"Adverse employment actions other than termination can constitute retaliation in violation of Title VII." *Rizzo v. Sheahan*, 266 F.3d 705, 717 (7th Cir. 2001). Although "adverse employment action" has been defined broadly, adverse actions must be "more than a 'mere inconvenience or an alteration of job responsibilities'" to be actionable. *Oest v. Illinois Dept. of Corrections*, 240 F.3d 605, 612 (7th Cir. 2001). Examples of materially adverse employment actions include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* at

612-13. Nonetheless, "not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an . . . employee did not like would form the basis of a discrimination suit." *Id.* at 613 (internal quotation marks omitted). Each set of circumstances must be evaluated on its own facts in determining whether an adverse action is material. *Id.*

The Seventh Circuit has determined that actions analogous to all of those alleged by Ms. Brown are insufficient to constitute materially adverse employment actions. *See Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 654 (7th Cir. 2001) (holding that change of schedule, videotaping, and disciplinary warnings are not adverse employment actions); *Stutler v. Illinois Dept. of Corrections*, 263 F.3d 698, 704 (7th Cir. 2001) (holding that ordering plaintiff to move work station to unfinished reception area and to return office key "too petty and tepid to constitute a material change in the terms and conditions of [plaintiff]'s employment"); *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996) (holding that "a *purely* lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action"); *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 691-92 (7th Cir. 2001) (holding that there was no adverse employment action where plaintiff's employer told other custodians not to help her and gave her additional responsibilities); *Parkins*

16

*v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1039 (7th Cir. 1998) (holding that shunning or ostracism by other employees, even if ordered by employer, is not an adverse employment action if it does cause "material harm" to plaintiff); *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996) (holding that negative evaluations, standing alone, do not constitute actionable adverse employment action).

On the other hand, the Seventh Circuit *has* found an adverse employment action under the totality of the circumstances where an employee was transferred to a new department where her supervisors did not know what her job entailed, the substance of her work changed from consulting to reference work, her business cards and her listing in professional directories and publications were taken away, she was taken out of her own office and assigned to a desk outside her supervisor's office that would typically have been occupied by a receptionist, and her new desk had no telephone, which interfered with her ability to conduct her business activities. *Collins v. Illinois*, 830 F.3d 692, 704 (7th Cir. 1987).[4]

Viewed in the aggregate, and in the light most favorable to

---

[4] Habitat argues that *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), changed the adverse employment action landscape to require adverse economic impact. It misconstrues *Ellerth*, which involved the definition of a "supervisor" under Title VII and held only that "[a] tangible employment action *in most cases* inflicts direct economic harm." *Id.* at 762 (emphasis added).

Ms. Brown, I find that a reasonable jury could conclude that she suffered an adverse employment action. Viewed individually, many of the changes in her work environment may have been merely inconvenient, *see* above, but the total effect was material. The change of duties from cleaning the main office and distributing keys to other employees to cleaning apartment units by herself could be perceived as a demotion. She claims that keys were thrown at her from the second floor, and although this incident lacks context (perhaps the thrower wanted to save her the trip up the stairs), I must draw reasonable inferences in her favor here, and a jury could conclude that this type of treatment and exclusion made it more difficult for Ms. Brown to do her job. Most important, however, is the claim that she alone was made to punch in at a makeshift station in a dirty closet, away from other employees. The Seventh Circuit acknowledged in *Collins* that "other courts have found adverse job impact . . . in moving an employee's office to an undesirable location[ or] transferring an employee to an isolated corner of the workplace," 830 F.2d at 703 & n.8 & n.9, although it has more recently declined to find that assignment to work in "an undesirable work area called 'the cage'" was an adverse employment action because there was no evidence that other employees perceived it as undesirable and there was "no evidence that work in the cage involved lower pay, different hours, or any sort of hindrance from earning" the wages to which the employee was entitled under company

policy. *See Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1119 n.2 (7th Cir. 2001). Nonetheless, "[a]dverse job action is not limited solely to loss or reduction of pay or monetary benefits." *Smart*, 89 F.3d at 441. Ms. Brown says that the wiring in the closet was so poor that she received an electrical shock that burned her hand and kept her out of work for a week. A jury could believe that this injury affected her ability to do her job, and although she does not allege that Habitat deliberately electrocuted her, a jury could believe that, combined with all of the other changes in her employment conditions, the relegation to the dirty closet was done with the intent to punish her for complaining about Gilliano's assault. Habitat does not offer a legitimate, non-retaliatory explanation for any of these actions, so I deny summary judgment on Ms. Brown's pre-termination retaliation claim.

## C. Intentional Infliction of Emotional Distress

Habitat argues that Ms. Brown's claim for intentional infliction of emotional distress ("IIED") is also preempted by the IWCA. I rejected that argument with respect to the other state law claims, and Habitat offers no reason to evaluate the argument differently with respect to the IIED claim under the summary judgment standard. Habitat takes the allegations of the complaint as true for the purposes of this motion, so I find there is at least a question of fact about whether Habitat authorized Gilliano's actions that precludes summary judgment on that basis.

However, Habitat also argues that the IIED claim is preempted by the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.*, and that Ms. Brown anyhow fails to state a claim for IIED. The IHRA preempts common law claims when those common law claims are "inextricably linked" to a discrimination claim. "[I]f a common law action is in essence one which seeks redress for a 'civil rights violation' as defined by the Act and there is no basis for action other than the Act, [Illinois courts] lack[] jurisdiction to adjudicate the claim." *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997).

The Illinois Supreme Court held in *Maksimovic* that, even though a plaintiff's claims of sexual harassment involved the same allegations as her claims of assault, battery, and false imprisonment, those common law claims were not preempted because "[t]he sexual harassment aspect . . . is merely incidental to what are otherwise ordinary common law tort claims." *Id.* If the plaintiff can allege the elements of a long-recognized tort action and a basis for the defendant's liability without reference to any legal duties created by the IHRA, the common law claims are not preempted. *Id.*

Here Ms. Brown can allege the elements of a claim for IIED, and a basis for Habitat's liability (express authorization by ratification after the fact), but she cannot do so independently of the duties created by the IHRA. Her IIED claim is based on the

assault by Gilliano in September 1999 and on the alleged acts of retaliation, including changing her duties, banning her from the office, throwing the keys to her, requiring her to punch in in the dirty closet, and Gilliano's stares. To prevail on a claim of IIED under Illinois law, a plaintiff must prove that: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct in fact caused severe emotional distress." *Wilson v. Norfolk & W. Ry. Co.*, 718 N.E.2d 172, 180 (Ill. 1999). "[T]he tort does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (citing Restatement (2d) of Torts § 46, comment d, at 73 (1965)). "[T]he degree of power or authority which a defendant has over a plaintiff can impact upon whether that defendant's conduct is outrageous. The more control [that] a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment." *Id.* "[T]he nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Kolegas v. Heftel Broad.*

*Corp.*, 607 N.E.2d 201, 211 (Ill. 1992). In addition, "conduct, though not extreme and outrageous *per se*, [may become] so by its retaliatory and punitive nature." *Johnson v. Federal Reserve Bank of Chicago*, 557 N.E.2d 328, 331 (Ill. App. Ct. 1990).

Gilliano's assault was boorish, offensive, and inappropriate, and the changes in Ms. Brown's work environment that followed were unpleasant, but standing alone, these are not actions beyond the bounds of decency and civilized society. *See, e.g., Piech v. Arthur Andersen & Co.*, 841 F. Supp. 825, 831-32 (N.D. Ill. 1994) (Zagel, J.) (holding that allegations that stated Title VII claim for workplace sexual harassment, including single sexual advance and other general discriminatory conduct, did not state claim for IIED); *Bruce v. South Stickney Sanitary Dist.*, No. 01 C 3578, 2001 WL 968726, at *4 (N.D. Ill. Aug. 24, 2001) (Kocoras, J.) (holding that plaintiff did not state claim for IIED where supervisor kissed her and implicitly threatened her job if she failed to comply with his advances). Nonetheless, Ms. Brown alleges, and Habitat accepts as true for the purposes of its summary judgment motion, that the changes in her working environment were retaliatory, and if a jury believed her it might find the entire course of conduct to be extreme and outrageous. *See Johnson*, 557 N.E.2d at 331 (otherwise non-actionable conduct may become actionable by virtue of retaliatory nature); *Class v. New Jersey Life Ins. Co.*, 746 F. Supp. 776, 778-79 (N.D. Ill. 1990) (Lindberg, J.) (same); *Pommier*

*v. James L. Edelstein Enters.*, 816 F. Supp. 476, 483 (N.D. Ill. 1993) (Aspen, J.) (superseded by statute on other grounds as stated in *Howard v. Board of Educ. of Sycamore Community Unit Sch. Dist. No. 427*, 876 F. Supp. 959, 970 (N.D. Ill. 1995)) (same).

However, because Ms. Brown's IIED claim survives only on the basis of her allegations of retaliation, her retaliation claim is not "merely incidental" to her common law IIED claim. *See Maksimovic*, 687 N.E.2d at 23. The IHRA prohibits retaliation against employees who complain about discrimination or harassment, 775 ILCS 5/6-101(a), and preempts any common law claim of retaliation. *Corluka v. Bridgford Foods of Ill., Inc.*, 671 N.E.2d 814, 817 (Ill. App. Ct. 1996). Ms. Brown's IIED claim here fails not because, as Habitat argues, it is based on the same facts as her harassment claim, but because, when the allegations of retaliation are removed, she fails to state a claim for IIED. *Cf. Siljak v. Ravenswood Disposal Serv., Inc.*, No. 00 C 3405, 2001 WL 436133, at *3 (N.D. Ill. Apr. 26, 2001) (Darrah, J.) (holding that IIED claim was not preempted because even "if plaintiff removed all the allegations of discrimination from her complaint, her IIED claim would remain fully intact because it does not 'depend on the prohibitions against sex discrimination for its survival'"). Because Ms. Brown's only theory of recovery on her IIED claim sounds in retaliation, it is not independent of the IHRA, and is preempted. *See Smith v. Chicago Sch. Reform Bd. of Trustees*, 165

23

F.3d 1142, 1151 (7th Cir. 1999) ("Racial discrimination was not 'merely incidental' to a mundane tort, as in *Maksimovic*, 687 N.E.2d at 23; it is the core of [plaintiff]'s theory."). I grant summary judgment on count VI.

## IV. Conclusion

Habitat's motion for summary judgment is DENIED with respect to the sexual harassment claim in count I; GRANTED with respect to the retaliatory discharge claim but DENIED as to the allegations of pre-termination retaliation in count II; and GRANTED as to the IIED claim in count VI. The motion to dismiss is DENIED with respect to counts II, IV, and V.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated:   August 2, 2002